UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NORTHEAST CARPENTERS HEALTH, PENSION, ANNUITY, APPRENTICESHIP and LABOR MANAGEMENT COOPERATION FUNDS,<br><br>Plaintiffs,<br><br>-against-<br><br>LPS PREMIUM INSTALLERS, INC. and LPS AUTOS, INC. D/B/A LPS OFFICE INTERIORS and LPS INSTALLERS,<br><br>Defendants. | 19 CV _____<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF ACTION

1.  Plaintiffs Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Management Cooperation Funds (collectively, the "Funds") commence this action against LPS Premium Installers, Inc. ("LPS Premium") and LPS Autos, Inc. d/b/a LPS Office Interiors and LPS Installers ("LPS Office") (collectively, "Defendants") to recover unpaid benefit contributions that Defendants owe the Funds under sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1132(a)(3), 1145 ("ERISA"), and section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA").

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and 29 U.S.C. §§ 185 and 1132(e)(1).

1

3. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the Funds are administered in this district.

## THE PARTIES

4. Plaintiffs Trustees of the Northeast Carpenters Health, Pension, Annuity and Apprenticeship Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The ERISA Funds maintain their principal place of business in Dutchess County, New York, located at 10 Corporate Park Drive, Suite B, Hopewell Junction, New York 12533.

5. Plaintiffs Trustees of the Northeast Carpenters Labor Management Cooperation Fund (the "Labor Management Fund," and together with the ERISA Funds, the "Funds") are employer and employee trustees of a labor management cooperation committee established under section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9). The Labor Management Fund maintains its principal place of business in Dutchess County, New York, located at 10 Corporate Park Drive, Suite B, Hopewell Junction, New York 12533.

6. Defendant LPS Premium is a New York corporation. At all relevant times, LPS Premium is and has been employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. LPS Premium maintains a principal place of business at 2631 Merrick Road, Suite 301, Bellmore, New York 11710.

7. Defendant LPS Office is a New York corporation. At all relevant times, LPS Office is and has been employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of section 501 of the LMRA,

29 U.S.C. § 142.  LPS Office maintains a principal place of business at 1815 Broadhollow Road, Farmingdale, New York 11735.

## STATEMENT OF FACTS

### LPS Premium's Collective Bargaining Agreement

8. At all relevant times, LPS Premium was a signatory to, or otherwise manifested an intention to be bound by, a collective bargaining agreement (the "CBA") with the New England Regional Council of Carpenters or a predecessor thereto (the "Union").

9. The Union is a labor organization within the meaning of section 301 of the LMRA, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in section 502 of the LMRA, 29 U.S.C. § 142.

10. The CBA required LPS Premium, *inter alia*, to make specified hourly benefit contributions to the Funds in connection with all work performed in the trade and geographical jurisdiction of the Union ("Covered Work").

11. Additionally, LPS Premium was required to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions under the terms of the CBA.

12. Pursuant to the CBA and the documents and instruments governing the Funds, an employer is liable for all delinquent contributions, plus compounded interest thereon at the rate of 9% per annum, liquidated damages of 20% of the delinquent contributions, audit costs, and all reasonable attorneys' fees, disbursements, and costs incurred by the Funds in collecting the delinquency.

13. Pursuant to the CBA, the Funds conducted an audit of LPS Premium covering the period June 1, 2016 through December 29, 2018 (the "Audit"), which revealed that LPS Premium

failed to remit benefit contributions to the Funds in the principal amount of $20,722.28 arising from LPS Premium's Covered Work.

**Defendants are Alter Ego Companies and Constitute a Single Employer**

14. At all relevant times, LPS Premium and LPS Office operated as a single, integrated employer, with interrelation of operations, common management, centralized control of labor relations, common ownership, and common facilities and equipment.

15. At all relevant times, LPS Premium and LPS Office were alter egos of each other, as they have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.

16. At relevant times, LPS Premium was and is owned and operated by Steven Pou.

17. At relevant times, LPS Office was and is owned and operated by Louis Pou.

18. Upon information and belief, Steven and Louis Pou are brothers.

19. Defendants shared common management and operations.  For example, on LPS Office's website, Steven Pou, the owner of LPS Premium, is listed as the Logistics Coordinator. Similarly, Steven Pou's Facebook profile states that he works at LPS Office.  Further, the auditor determined that Louis Pou, the owner of LPS Office, worked for LPS Premium in 2018.

20. Defendants shared common employees and officers.  For example, the Steven and Louis Pou's father is listed on LPS Office's website as Project Manager, while the audit revealed that he worked for LPS Premium in 2018.  Further, the Steven and Louis Pou's mother is identified on LPS Office's website as Operations Manager, and her cell phone number appears to be LPS Premium's phone number.

21. Defendants are both engaged in the business of performing office workspace planning, and office design and construction, all of which is Covered Work.

22. Defendants worked on the same projects, using the same equipment and many of the same employees, without any meaningful distinction in their operations.

23. In the course of performing the Audit, the auditor uncovered numerous payments made by LPS Office to LPS Premium.

24. LPS Premium's Certified Public Account ("CPA") claimed the payments represented installation work done by LPS Premium for LPS Office.

25. LPS Office had two contracts with the City of New York in 2018. One contract was with the New York City Department of Corrections, and the second with the New York City Department of Sanitation. LPS Office's work with respect to such contracts constitutes Covered Work under LPS Premium's CBA.

26. Defendants have failed to follow ordinary corporate formalities or keep separate records, and there has never been an arm's length relationship between or among them. For example, LPS Office's website identifies the company as "LPS Office Installers" despite there being no corporation registered under that name with the Department of State. Further, LPS Office's workers' compensation policy provides coverage for an additional entity named "LPS Installers."

27. Upon information and belief, Defendants have created and/or maintained separate entities to perpetuate a fraud against the Funds, including the avoidance of LPS Premium's obligations to the Funds under the CBA.

28. LPS Office had prior knowledge of LPS Premium's obligations to the Funds.

29. As alter egos of and single employers of each other, Defendants are subject to the CBA's terms and each are liable for each other's unpaid contributions and obligations to the Funds.

## PLAINTIFF'S FIRST CLAIM FOR RELIEF AGAINST LPS PREMIUM
(Liability for Delinquent Contributions/Violation of the CBA)

30. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

31. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

32. Section 301 of the LMRA authorizes Plaintiffs, as third-party beneficiaries to the CBA, to file a federal lawsuit regarding an employer's violation of that CBA.

33. At relevant times, LPS Premium was a party to or otherwise bound by the CBA.

34. The CBA and Plaintiffs' governing documents required LPS Premium to make specified hourly contributions to Plaintiffs in connection with all work performed within the trade and geographical jurisdiction of the CBA and to submit and comply with periodic payroll audits when requested by Plaintiffs.

35. LPS Premium violated the CBA when it failed to remit contributions for all work it performed within the trade and geographical jurisdiction of the CBA.

36. Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the CBA, and the documents and instruments governing the Funds, Plaintiffs are entitled to an order finding that LPS Premium is liable for delinquent contributions for the period of June 1, 2016 through December 29, 2018 in the principal amount of $20,722.28, plus any delinquent benefit contributions through the present, plus late payment interest at the rate of nine percent (9%) per annum, liquidated damages in the amount of twenty

percent (20%) of the amount of delinquent contributions owing, reasonable attorneys' fees, audit fees, and other costs incurred during the audit and collections procedures.

## PLAINTIFFS' SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
(**Alter Ego & Single Employer Liability/Liability for Delinquent Contributions/Violation of the CBA**)

37. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

38. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

39. Section 301 of the LMRA authorizes the Funds, as third-party beneficiaries to the CBA, to file a federal lawsuit regarding an employer's violation of that CBA.

40. At relevant times, LPS Premium was a party to or otherwise bound by the CBA.

41. The CBA and the documents and instruments governing Plaintiffs required LPS Premium to make specified hourly contributions to Plaintiffs in connection with all work performed within the trade and geographical jurisdiction of the CBA and to submit to and comply with periodic payroll audits when requested by Plaintiffs.

42. At relevant times, LPS Premium and LPS Office were alter egos and single employers of each other and had substantially identical management, business purpose, operations, equipment, customers, supervision, and ownership and interrelation of operations, and centralized control of labor functions.

43. By virtue of their status as alter egos and single employers, LPS Premium and LPS Office are and at all relevant times have been bound by the CBA and Plaintiffs' trust documents incorporated therein. Accordingly, Defendants are jointly and severally liable for each other's obligations thereunder, including obligations for delinquent contributions revealed by an audit of LPS Premium covering June 1, 2016 through December 29, 2018 in the amount of $20,722.28.

44. LPS Premium and LPS Office violated the CBA when they failed to remit all contributions for work performed within the trade and geographical jurisdiction of LPS Premium's CBA.

45. Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the CBA, and the documents and instruments governing the Funds, Plaintiffs are entitled to an order: (1) finding that LPS Premium and LPS Office are both alter egos and single employers of each other and constitute a single integrated enterprise; (2) directing LPS Premium and LPS Office to submit to an audit of their books and records to determine the extent of their delinquent contributions; and (3) finding that LPS Premium and LPS Office are jointly and severally liable for any delinquent contributions, including audit findings of $20,722.28, and associated liquidated damages, interest, fees, and costs, revealed by their audits, or otherwise found to be due and owing by LPS Premium and LPS Office during the course of this litigation.

**WHEREFORE,** Plaintiffs respectfully request that this Court issue an order:

(1) On Plaintiffs' First Claim for Relief, (1) awarding judgment in favor of Plaintiff and against Defendant LPS Premium for the delinquent benefit contributions identified in the Audit of $20,722.28, plus late payment interest at the rate of nine percent (9%) per annum, liquidated damages in the amount of twenty percent (20%)

of the amount of delinquent contributions owing, reasonable attorneys' fees, audit fees, and other costs incurred during the audit and collections procedures; and (2) require LPS Premium to submit to an audit for December 30, 2018 through the present;

(2) On Plaintiffs' Second Claim for Relief, declare that: (1) LPS Premium and LPS Office are both alter egos and single employers of each other and constitute a single integrated enterprise; (2) LPS Office submit to an audit of their books and records to determine the extent of their delinquent contributions; and (3) LPS Premium and LPS Office are jointly and severally liable for any delinquent contributions, including but not limited to the principal deficiency of $20,722.28 contained in the audit of LPS Premium covering June 1, 2016 through December 29, 2018, and associated liquidated damages, interest, fees, and costs, revealed by their audits, by the LPS Premium Audit, or otherwise found to be due and owing by LPS Premium and/or LPS Office during the course of this litigation; and

(3) Award Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: New York, New York
July 17, 2019

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: _____/s/_____
Nicole Marimon, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080
*Attorneys for Plaintiffs*